IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| JAMES E. BALL,<br><br>Plaintiff,<br><br>vs.<br><br>TERRI STEFALO, TOM WILSON,<br>PAUL LUCIER, LYNN FOSTER<br>KEN MARTHATHER, and SGT.<br>GERNSTEIN,<br><br>Defendants. | CV 14-00008-H-DLC-RKS<br><br><br>ORDER AND FINDINGS AND<br>RECOMMENDATIONS OF UNITED STATES<br>MAGISTRATE JUDGE |

**SYNOPSIS**

Mr. Ball alleges Defendants violated his constitutional rights when they

retaliated against him for filing and settling a lawsuit against another prison guard,

labeled him as a snitch, denied him access to religious services, denied him due

process in disciplinary hearings, destroyed his property without due process,

denied him access to the courts, yelled at him, and threatened him. (Complaint,

Doc. 2). Mr. Ball's claims of retaliation, failure to protect, and being denied access

to religious services in violation of the First Amendment will be served upon

1

Defendants. Mr. Ball's claims of denial of due process, denial of access to the courts, threats, and violation of the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA) fail to state a claim upon which relief may be granted and should be dismissed.

## JURISDICTION

Mr. Ball filed this action in federal court, in the Helena Division of the District of Montana. (Complaint, Doc. 2.) The Court has personal jurisdiction over the parties, all of whom are found in Montana. Fed. R. Civ. P. 4(k)(1)(A); Mont. R. Civ. P. 4(b). Read liberally, the Complaint attempts to allege a violation under 42 U.S.C. § 1983, invoking subject matter jurisdiction. 28 U.S.C. § 1331, 28 U.S.C. § 1343(a). The case was assigned to Hon. Dana Christensen, Chief United States District Court Judge, and referred to the undersigned. Local Rule 72.2(a)(1).

## STATUS

Mr. Ball is a prisoner in the custody of the State of Montana. His Complaint must be reviewed to determine if the allegations are frivolous, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. If so, the case must be dismissed. 28 U.S.C. §§ 1915(e)(2), 1915A(b). This is the review.

## STANDARDS

### Stating a claim

A complaint must allege sufficient factual matter to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility is less than probability, but requires "more than a sheer possibility that a defendant has acted unlawfully." *Id*. Pleadings that are no more than conclusions are not entitled to the presumption of truth and may be disregarded. *Id.* at 679. A plaintiff must plead the essential elements of a claim to avoid dismissal. *Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

### Leave to amend

The court liberally construes pro se pleadings. *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987). "Unless it is absolutely clear that no amendment can cure the defect . . . a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995).

Leave to amend a complaint should be given freely "when justice so

requires." Fed. R. Civ. P. 15.  A district court, however, should dismiss a

complaint without granting leave to amend if amendments would be futile.

*Klamath Lake Pharmaceutical Ass'n v. Klamath Medical Services Bureau*, 701

F.2d 1276, 1293 (9th Cir. 1983).  "Leave to amend need not be given if a

complaint, as amended, would be subject to dismissal."  *Moore v. Kayport*

*Package Exp., Inc.*, 885 F.2d 531, 538 (9th Cir. 1989).

**Retaliation**

To establish a claim for retaliation in violation of the First Amendment in

the prison context, a plaintiff must show:  1) a prison official took adverse action

against him because of his protected conduct, 2) that action chilled his exercise of

his constitutional rights, and 3) the action did not advance a legitimate correctional

goal.  *Wood v. Beauclair*, 692 F.3d 1041, 1051 (9th Cir. 2012) *citing Rhodes v.*

*Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).  The adverse action need not be

an independent constitutional violation.  *Pratt v. Rowland*, 65 F.3d 802, 806 (9th

Cir. 1995).  "[T]he mere threat of harm can be an adverse action, regardless of

whether it is carried out because the threat itself can have a chilling effect."

*Brodheim v. Cry*, 584 F.3d 1262, 1270 (9th Cir. 2009).  "[T]iming can properly be

considered as circumstantial evidence of retaliatory intent"  *Pratt v. Rowland*, 65

F.3d 802, 808 (9th Cir. 1995).

**Eighth Amendment–Harassment/Failure to Protect**

The Eighth Amendment requires that prison officials take reasonable measures to guarantee the safety of prisoners. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The failure of prison officials to protect inmates from attacks by other inmates or from dangerous conditions at the prison violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious; and (2) the prison official is, subjectively, deliberately indifferent to the plaintiff's safety. *Id.* at 834.

The Ninth Circuit has recognized a claim under 42 U.S.C. § 1983 "for violation of [an inmate's] right to be protected from violence while in custody" where prison officials labeled an inmate as a "snitch" and as a result he was threatened with harm. *Valandingham v. Bojorquez*, 866 F.2d 1135, 1138 (9th Cir. 1989).

Verbal harassment generally does not violate the Eighth Amendment. *Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996); *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987)(directing vulgar language at an inmate does not state a constitutional claim). Similarly, allegations of mere threats are not cognizable under § 1983. *Gaut v. Sunn*, 810 F.2d 923, 925 (9th Cir. 1987) (mere threat does not constitute constitutional wrong).

**Fourteenth Amendment–Procedural Due Process**

The Due Process Clause of the Fourteenth Amendment protects prisoners from being deprived of life, liberty, or property without due process of law. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). To state a cause of action for deprivation of procedural due process, a plaintiff must first establish the existence of a protected interest.

Prisoners are entitled to due process protections when subject to disciplinary sanctions that implicate "a protected liberty interest–that is, where the conditions of confinement impose an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Brown v. Oregon Dept. of Corrections*, ___ F.3d ___, 2014 WL 1687758 (9th Cir. 2014)(*quoting Sandin v. Conner*, 515 U.S. 472, 484 (1995)). A litigant alleging a due process violation must first demonstrate that he was deprived of a liberty interest protected by the Due Process Clause and then show that the procedures attendant upon the deprivation were not constitutionally sufficient. *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 459–60 (1989).

Prisoners have a protected interest in their personal property. *Hansen v. May*, 502 F.2d 728, 730 (9th Cir. 1974). An authorized, intentional deprivation of property (one carried out pursuant to established state procedures) is actionable

under the Due Process Clause. *Hudson v. Palmer*, 468 U.S. 517, 532, n. 13 (1984) (*citing Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982)); *Piatt v. McDougall*, 773 F.2d 1032, 1036 (9th Cir. 1985). Negligent and/or unauthorized intentional deprivations of property by a state employee do not "constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available." *Hudson*, 468 U.S. at 533; *Parratt v. Taylor*, 451 U.S. 527, 535-44 (1981) (no due process violation where a state employee negligently lost prisoner's hobby kit), *overruled in part on other grounds, Daniels v. Williams*, 474 U.S. 327, 330-31 (1986). Therefore, if a state employee loses or steals an inmate's property and the state provides a meaningful post-deprivation remedy, there is no claim under the Due Process Clause.

**Religious Claims**

"Inmates retain the protections afforded by the First Amendment, 'including its directive that no law shall prohibit the free exercise of religion.'" *Shakur v. Schriro*, 514 F.3d 878, 883–84 (9th Cir. 2008) (*quoting O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987)). To implicate the Free Exercise Clause, a prisoner must show that the belief at issue is both "sincerely held" and "rooted in religious belief." *Malik v. Brown*, 16 F .3d 330, 333 (9th Cir. 1994). If the inmate

makes his initial showing, he must establish that prison officials substantially

burden the practice of his religion by preventing him from engaging in conduct

which he sincerely believes is consistent with his faith.  *Shakur*, 514 F.3d at

884–85.

Under RLUIPA, a government may not impose a substantial burden on the

religious exercise of a confined person unless the government establishes that the

burden furthers a "compelling governmental interest" and does so by "the least

restrictive means."  42 U.S.C. § 2000cc-l(a)(l)-(2).  Damages are not available for

official-capacity RLUIPA claims.  *Sossamon v. Texas*, —— U.S. ——, 131 S.Ct.

1651, 1663 (2011).  In addition, the Ninth Circuit recently held that damages are

not available against defendants sued in their individual capacity under RLUIPA.

*Wood v. Yordy*, ___ F.3d  ___, 2014 WL 2462575 (9th Cir. June 3, 2014).

**Access to the Courts**

Prisons must provide "a reasonably adequate opportunity to present claimed

violations of fundamental constitutional rights to the courts."  *Lewis v. Casey*, 518

U.S. 343, 351 (1996) (*citing Bounds v. Smith*, 430 U.S. 817, 825 (1977)).  There is

no "abstract, freestanding right to a law library or legal assistance.  *Casey*, 518

U.S. at 351.  Instead, an inmate must "demonstrate that the alleged shortcomings in

the library or legal assistance program hindered his efforts to pursue a legal claim."

*Casey,* 518 U.S. at 351.

To show a violation of this right to access to the courts, an inmate must demonstrate "actual injury," that is, a specific instance in which he was denied access. *Silva v. DiVittorio*, 658 F.3d 1090, 1102 (9th Cir. 2011); *see also Casey*, 518 U.S. 9 at 349. "The injury requirement is not satisfied by just any type of frustrated legal claim." *Casey,* 518 U.S. at 354-55. Prisoners have a right to access to the courts only in relation to direct appeals from the convictions for which they were incarcerated, habeas petitions, or civil rights actions challenging the conditions of their confinement. *Id.* This right of access to the courts "guarantees no particular methodology but rather the conferral of a capability-the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *Id.* at 356. Moreover, the right of access to courts is only a right to bring complaints to federal court and not a right to the discovery of such claims or to litigate them effectively once filed with a court. *Id.* at 354-55.

## FACTUAL ALLEGATIONS

For purposes of this review, the allegations in the Complaint are presumed to be true so long as they have some factual support. Unsupported legal conclusions are disregarded.

**Retaliation and Discipline**

Mr. Ball filed a federal lawsuit in this Court in July 2011 against a prison guard named Carl Beckworth. *Ball v. Beckworth, Civil Action No. 6:11-CV-37-H-DWM-RKS, Doc. 2.* The Court was advised that the parties settled that case on April 26, 2012 and the case was dismissed on May 29, 2012. *Ball v. Beckworth, Civil Action No. 6:11-CV-37-H-DWM-RKS, Doc. 20, 22.*

In the Complaint filed in this action, Mr. Ball alleges Defendants Lucier, Marthaller, Foster, Gernstein, and other prison staff at Montana State Prison were angry about Mr. Ball's settlement in the Beckworth case. He alleges that sometime toward the end of April 2012 and on July 1, 2012, Defendant Lucier told him not to gloat or feel comfortable about settling the court case against Officer Beckwith. He told Mr. Ball, "What goes around comes around, we don't get just mad, we get even you damn litigator."[1] (Complaint, Doc. 2 at 10.)

Mr. Ball alleges that on June 28, 2012, Defendant Paul Lucier woke him up at approximately 11:00 p.m. and told he was being locked up for engaging in sexual acts. He was later found not guilty of this offense, but was found guilty of planning to commit sexual acts. Defendant Lucier told Mr. Ball that he was

---

[1]Mr. Ball states that he is known in prison by the sobriquet "The Irish Litigator." Doc. 2 at 11.

putting an "atypical sexual predator status"[2] on him. The status negatively affected his housing and custody level and limited the type of jobs he could get. Doc. 2 at 12. Mr. Ball requested a hearing. Doc. 2 at 6. At his disciplinary hearing the "atypical sexual predator status" was not addressed. Weeks later, Mr. Ball was placed under "atypical sexual predator" status at a reclassification hearing. At that hearing, he was not allowed to call witnesses and was told that the atypical sexual predator status was already on him.

Mr. Ball also alleges that on July 2, 2012, while he was in the lock up unit, under investigation and awaiting disciplinary proceedings, Defendant Lucier had him brought to the sergeant's office. There, Defendant Lucier told Mr. Ball that he could not find Mr. Ball guilty of committing any prison rule violation and Mr. Ball would most likely go back to the low side security side of the prison at his previous status. Mr. Ball told Defendant Lucier that he was not admitting to anything he did not do. At that point, Lucier screamed at Mr. Ball saying, "If you do not admitt [sic] to what I want you to admitt [sic] to, I am going to bury you, you hear me, bury you asshole." As Mr. Ball started to leave, Defendant Lucier screamed at him again saying, "You are not going to have to worry about doing the rest of your

_____

[2]Mr. Ball uses this phrase repeatedly in his Complaint but does not explain its precise meaning. The undersigned assumes it refers to a penal classification.

time, Litigator." Mr. Ball construed these as death threats because he would not admit to committing sexual acts with another inmate. He alleges these threats caused him chest pains and migraine headaches from high blood pressure. Doc. 2 at 9-10.

That afternoon Defendant Lucier coerced several inmates to sign false statements against Mr. Ball, leading to Mr. Ball being written up for sexual acts, sexual proposals, and planning. Doc. 2 at 10.

Mr. Ball alleges the charge of planning to commit sexual acts/sexual proposals was based on confidential informants whose credibility was not properly evaluated, he was not allowed to call witnesses, and he was not given assistance in obtaining evidence on his behalf. As a result of that charge, Mr. Ball was reclassified from minimum custody to medium restricted custody. He was moved from the low security area of the prison to the high security area. Doc. 2 at 14.

**Property**

From July 2012 to March 2013, Defendant Marthaller withheld Mr. Ball's Self-Help Litigation Manual. While Mr. Ball was locked up,[3] Defendant Marthaller destroyed his box full of court papers, legal research, canteen, his

---

[3]Mr. Ball does not explain precisely what he means by "locked up." The undersigned assumes that Mr. Ball is referring to being confined separately from the general prison population as a punitive measure.

address book, and photographs of family and friends, without offering or giving him a due process hearing.  Doc. 2 at 15.

On July 12, 2012, after getting out of lock-up, Mr. Ball was called to the prison property office to pick up his property.  Defendants Marthaller and Foster were present when he got to the property room.  After he examined his property, he told Officer Marthaller that he had property missing.  Defendant Marthaller stated that if property was missing it was destroyed or thrown away and to just sign the waiver of liability form.  On July 12, 2012, Property Officers Marthaller and Foster told Mr. Ball that the destruction of his property was a reprisal because they were good friends with Officer Beckwith.  Mr. Ball initially refused to sign the property waiver form and was yelled at by Defendant Foster.  He eventually signed the property waiver form but only under great duress and threats. (Complaint, Doc. 2 at 16-17.)

### Labeling as a "snitch"

On or about July 22, 2012, Mr. Ball was punched in the mouth and threatened by three other inmates.  The inmates who did this said that Defendants Lucier and Gernstein told them Mr. Ball was a "snitch" who had reported the unauthorized sale of goods between inmates.  Doc. 2 at 13.

**Religion**

Mr. Ball alleges he was denied access to religious services between July 13, 2012 and July 8, 2013 because Defendants Wilson and Stefalo refused to put a religious preference sticker on his prison identification card.  In August, 2012, he tried to attend religious services at the prison chapel but because he did not have a religious preference sticker on his prison identification card, he was sent back to his housing unit.  Defendants Stefalo and Wilson ignored his written requests to for a religious preference sticker.  (Complaint, Doc. 2 at 20-21.)

## ANALYSIS

**Retaliation**

Mr. Ball's allegations that he was subjected to false disciplinary reports, had an atypical sexual predator status placed on him, and had his property destroyed because he filed and settled a lawsuit against another prison guard are sufficient to state a retaliation claim.  Defendants Lucier, Gernstein, Foster, and Marthaller must respond to this claim.

**Fourteenth Amendment Procedural Due Process**

Mr. Ball alleges both a deprivation of liberty and property interests without due process.  Both claims fail.

<u>Liberty Interests</u>

Liberally construed, Mr. Ball alleges a due process violation stemming from his June-July 2012 disciplinary charges, but his allegations do not implicate a liberty interest protected by the Constitution. Mr. Ball has not alleged sufficient facts to show conditions in disciplinary confinement imposed an atypical and significant hardship on him in relation to the ordinary incidents of prison life. *Sandin*, 515 U.S. at 483-4. In considering whether conditions impose an atypical and significant hardship, courts may consider the conditions of confinement, the duration of the sanction, and whether the sanction will affect the duration of the prisoner's sentence. *Ramirez v. Galaza*, 334 F.3d 850, 861 (9th Cir. 2003). Mr. Ball was in "lock-up" from June 28, 2012 until July 12, 2012. Placement in disciplinary confinement for two weeks does not constitute an atypical or significant hardship that would trigger a liberty interest. *See Sandin*, 515 U.S. at 472 (30 days disciplinary segregation is not atypical and significant).

Mr. Ball's allegations that the "atypical sexual predator status" impacted his prison status also fail to state a due process claim. Mr. Ball does not have a federally protected liberty interest in a particular classification or security level. *Moody v. Daggett*, 429 U.S. 78, 88 n. 9 (1976).

Mr. Ball has not alleged the deprivation of a protected liberty interest,

therefore, his due process claims regarding his disciplinary hearings and atypical sexual predator status designation fail to state a claim. These claims should be dismissed.

### Property Interests

When Mr. Ball got locked up, Defendant Marthaller destroyed his box full of court papers, legal research, canteen, his address book, and pictures of his mother and friends, without providing him a due process hearing. Doc. 2 at 15. Mr. Ball alleges this was property he was authorized to have and it was destroyed because Defendants Foster and Marthaller wanted to retaliate against him for suing their friend, Officer Beckwith. These are allegations of an unauthorized intentional taking of property which does not constitute a violation of the procedural requirements of the due process clause because the Montana Tort Claims Act provides prisoners an adequate post-deprivation remedy. *Hudson*, 468 U.S. at 533; *Parratt*, 451 U.S. at 535-44; Mont. Code Ann. §§ 2-9-101, *et seq.* This claim should be dismissed.

**Eighth Amendment**

Mr. Ball alleges Defendants Lucier and Gernstein labeled him as a snitch and as a result he was assaulted by other inmates. These allegations are sufficient to state an Eighth Amendment claim. *Valandingham*, 866 F.2d at 1138.

Defendants Lucier and Gernstein must respond to this claim.

**Verbal Harassment**

Mr. Ball's allegations of verbal harassment and/or threats are insufficient to state a federal claim for relief and should be dismissed. *Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996); *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987); *Gaut v. Sunn*, 810 F.2d 923, 925 (9th Cir. 1987) (mere threat does not constitute constitutional wrong).

**RLUIPA**

All claims for damages under RLUIPA should be dismissed. *Sossamon*, 131 S.Ct. 1651 at 1663; *Wood*, 2014 WL 2462575. Mr. Ball does specifically seek injunctive relief with regard to his religious claims and he admits that he received a religious preference sticker in July 2013. Therefore, any possible claims for injunctive relief under RLUIPA are moot. All RLUIPA claims should be dismissed.

**First Amendment**

Mr. Ball alleges he was not allowed to participate in religious services for nearly a year because Defendants Stefalo and Wilson refused to provide him with a religious preference sticker for his identification card. These allegations state a First Amendment claim and Defendants Stefalo and Wilson must respond to this

claim.  *See Shakur*, 514 F.3d at 883–85.

**Access to the Courts**

Mr. Ball alleges Defendant Marthaller confiscated his self-help litigation manual from July 2012 until March 2013 and deliberately impeded and hindered his access to the courts.  Mr. Ball has not alleged that he lost the chance to bring a challenge to his sentence or conditions of confinement.  *Casey,* 518 U.S. at 354-55. The Court is quite familiar with Mr. Ball's litigation activities.  See e.g. *Ball v. Beckworth*, Civil Action No. 11-37-H-DWM, *Usrey v. Deyott*, et al., Civil Action No. 12-cv-92-DLC, and now this action.[4]  Mr. Ball can make no plausible claim that he has lost a chance to challenge his sentence or conditions of confinement. This claim should be dismissed.

**CONCLUSION**

Defendants must make an appearance on Mr. Ball's claims of retaliation, failure to protect, denial of property without due process of law, and denial of access to religious services in violation of the First Amendment.  Mr. Ball's claims regarding his disciplinary hearing, being given "atypical sexual predator status," denial of access to the courts, threats, and his RLUIPA claims fail to state a claim

---

[4]The Court may take judicial notice of the existence of a court opinion.  Lee v. City of Los Angeles, 250 F.3d 668, 690 (9th Cir. 2001).

upon which relief may be granted.  These are not defects which could be cured by the allegation of additional facts.  These claims should be dismissed.

It is **ORDERED**:

1.  Pursuant to Fed.R.Civ.P. 4(d), Defendants are asked to waive service of summons by executing, or having counsel execute, the Waiver of Service of Summons.  The Waiver must be returned to the Court within **thirty (30) days of the entry date reflected on the Notice of Electronic Filing**.  If Defendants choose to return the Waiver of Service of Summons, the answer or appropriate motion will be due within <u>60 days after the entry date of this Order</u> as reflected on the Notice of Electronic Filing, pursuant to Fed.R.Civ.P. 12(a)(1)(B).

2.  The Clerk of Court shall forward the documents listed below to:

Legal Counsel for the
Montana Department of Corrections
P.O. Box 201301
Helena, MT 59620-1301

\*      Complaint (Doc. 2);

\*      this Order;

\*      a Notice of Lawsuit & Request to Waive Service of Summons; and

\*      a Waiver of Service of Summons

3.  Any party's request that the Court grant relief, make a ruling, or take an

action of any kind must be made in the form of a motion, with an appropriate caption designating the name of the motion, served on all parties to the litigation, pursuant to Federal Rules of Civil Procedure 7, 10, and 11.  If a party wishes to give the Court information, such information must be presented in the form of a notice.  The Court will not consider requests made or information presented in letter form.

4.  Pursuant to Fed.R.Civ.P. 5(a), all documents presented for the Court's consideration must be simultaneously served by first-class mail upon the opposing party or their counsel if the party is represented.  Each party shall sign and attach a proper certificate of service to each document filed with the Court.  The Certificate of Service must state the date on which the document was deposited in the mail and the name and address of the person to whom the document was sent.  The sender must sign the certificate of service.

5.  Mr. Ball <u>shall not</u> make any motion for default until at least seventy (70) days after the date of this Order.

6.  At all times during the pendency of this action, Mr. Ball shall immediately advise the Court and opposing counsel of any change of address and its effective date.  Failure to file a notice of change of address may result in the dismissal of the action for failure to prosecute pursuant to Fed.R.Civ.P. 41(b).

It is **RECOMMENDED:**

Mr. Ball's claims regarding his disciplinary hearing, being given an atypical sexual predator status, denial of access to the courts, threats, and all RLUIPA claims should be dismissed.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT

Mr. Ball may file objections to these Findings and Recommendations within fourteen (14) days after service (mailing) hereof.[5] 28 U.S.C. § 636. Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

This order is not immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Fed.R.App.P. 4(a), should not be filed until entry of the District Court's final judgment.

DATED this 3rd day of July, 2014.


  _/s/ Keith Strong_____
  Keith Strong
  United States Magistrate Judge

---

[5]As this deadline allows a party to act after the Findings and Recommendations is "served," it falls under Fed.R.Civ.P. 6(d). Therefore, three (3) days are added after the period would otherwise expire.

## NOTICE OF LAWSUIT AND REQUEST FOR
## WAIVER OF SERVICE OF SUMMONS

TO:    Legal Counsel for the Montana Department of Corrections
       P.O. Box 201301
       Helena, MT 59620-1301

A lawsuit has been commenced by a pro se plaintiff against Terri Stefalo, Tom Wilson, Paul Lucier, Lynn Foster, Ken Marthather, and Sgt. Gernstein.  A copy the Complaint is attached to this notice.  It has been filed in the United States District Court for the District of Montana, Civil Action No. CV-14-08-H-DLC-RKS.  The Court has completed its pre-screening and concludes Defendants must file a responsive pleading.  *See* 42 U.S.C. § 1997e(c), (g)(2); 28 U.S.C. §§ 1915(e)(2), 1915A(a), (b).

This is not a formal summons or notification from the Court, but rather a request that you sign and file the enclosed waiver of service in order to save the cost of service by the U.S. Marshal's Service.  The cost of service will be avoided if you file the signed Waiver of Service of Summons within 30 days of the date the Order directing this Notice of Lawsuit and Request for Waiver of Service of Summons to be sent was entered as indicated on the Notice of Electronic Filing.

If you comply with this request and return the waiver to the Court, it will be filed with the Court and no summons will be served.  The action will then proceed as if you had been served on the date the waiver is filed, except you must file an answer or appropriate motion within 60 days of the date the Order directing this Notice of Lawsuit and Request for Waiver of Service of Summons to be sent was entered as indicated on the Notice of Electronic Filing.

If you do not wish to waive service on behalf of Defendants, please indicate this on the Waiver of Service of Summons form.  The Court will, in turn, order the U.S. Marshal's Service to serve the complaint personally on Defendants and may impose the full costs of such service.


        _____*/s/ Keith Strong*_____
        Keith Strong
        United States Magistrate Judge


## WAIVER OF SERVICE OF SUMMONS

TO:    The U.S. District Court for the District of Montana

The following Defendants acknowledge receipt of your request to waive service of summons in the following action: <u>Ball v. Stefalo, et al.</u>, Civil Action No. CV-14-08-H-DLC-RKS filed in the United States District Court for the District of Montana.  Defendants also received a copy of the Complaint.  I am authorized by the following Defendants to agree to save the cost of service of a summons and an additional copy of the Complaint in this action by not requiring that the following individuals be served with judicial process in the case provided by Fed.R.Civ.P. 4:

_____; _____;

_____; _____;

_____; _____;

The above-named Defendants retain all defenses or objections to the lawsuits or to the jurisdiction or venue of the Court except for objections based on a defect in the summons or in the service of the summons.  I understand judgments may be entered against the above-named Defendants if an answer or motion under Fed.R.Civ.P. 12 is not served within 60 days after the date the Order directing the Notice of Lawsuit and Request for Waiver of Service of Summons to be sent was entered as indicated on the Notice of Electronic Filing.

I decline to waive service on behalf of the following Defendants:

_____; _____;

_____; _____;

_____; _____;


_____        _____
DATE                                    SIGNATURE

                                        _____
                                        PRINTED/TYPED NAME

                                        _____

                                        _____
                                        ADDRESS